**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

JUN - 6 2005

| | | |
|---|---|---|
| THE CROWELL CORPORATION, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| PACE INTERNATIONAL UNION,
AFL-CIO CLC LOCAL 2-0770, | : | |
| Defendant | : | NO. 1-04-CV-259 (JJF) |

### Defendant's Reply Brief to Plaintiff's
### Response to Defendant's Motion for Relief

Presently pending before the Court is the Union's motion for relief. In that motion, the Union has asked the Court to issue an order that requires Crowell to pay the grievant, Robert Blisard, for the time that he was forced to wait, without pay, for Crowell to comply with the underlying arbitration award ("Award") that had directed the company to reinstate him "forthwith." That delay, which was in excess of one year, was occasioned solely by Crowell's unsuccessful effort to vacate the Award. Crowell has filed an opposition to the Union's motion, which the Union addresses below.

Crowell's initial argument in opposition to the Union's motion for relief is that this case does not present the requisite "extraordinary circumstances" that are required to obtain relief from the Court pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. It cites no authority in support of its contention and merely states that because the Court was not called upon to interpret the remedy the Arbitrator ordered, it is

inappropriate for the Union to request further relief from the Court. *See* Plaintiff's Response at ¶¶ 1-2. However, what Crowell completely ignores is the fact that the remedy, which the Court necessarily enforced by its Order, included the direction that Blisard be reinstated "forthwith," and that Crowell, due to its delaying appeal of that Award, thus failed to comply with that aspect of the Award and the Court's Order. It is that delay, with the resultant loss of pay to Blisard, that created the extraordinary circumstance that necessitates further action by the Court, either directly or by way of a remand to the Arbitrator.

Direct action by the Court is appropriate in order to put an end to this litigation and any collateral actions that might otherwise result from a denial of the requested direct relief. The Union has already been compelled to expend a great deal of its limited resources in order to vindicate its member's right to reinstatement. Rather than acceding to the Arbitrator's Award, however, Crowell elected to pursue its legal right to attempt to vacate the Award. The result of that action was two-fold: Blisard was kept out of work and without pay for an additional year, and the Union was forced to incur legal expenses to enforce the Award. Now Crowell seeks, in part, to add to those expenses by starting the process all over again with respect to the question of pay to Blisard.

Obviously, both the Court and the original Arbitrator, Lawrence Coburn, are thoroughly versed in the facts of the underlying arbitration from which the instant back pay dispute stems. The Court's resolution of the pay dispute at this juncture would put an end to this matter with no further expense by either party. Alternatively, a remand to Arbitrator Coburn would certainly be far less expensive to both parties, and would be far quicker, than requiring that a new arbitrator be selected to hear the pay dispute.

Arbitration is supposed to be a cheap and inexpensive means for resolving industrial disputes. The Court's resolution of the present pay issue would further that goal by avoiding a further delay in the finality of the original grievance.

Crowell argues that the Union's filing of a grievance to address the failure to pay Blisard must be decided by means of a new arbitration. However, the mere fact that the Union filed a protective grievance does not mean that this Court is somehow divested of jurisdiction, nor that the original Arbitrator is likewise without authority. Obviously, the Union has no way of predicting what action the Court will take in response to its current motion, so it filed its grievance as an alternative means of addressing the issue of the one year delay in reinstating Blisard and his resultant wage loss.

Crowell's next argument is that pursuant to the doctrine of *functus officio*, the original Award is complete, and there is no legal basis for remanding to Arbitrator Coburn. However, even Crowell recognizes, as it must, that the doctrine contains several exceptions, including one that states, "where the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify." *Teamsters Local 312 v. Matlack, Inc.*, 118 F.3d 985, 992 (3d Cir. 1997) (citations omitted). As the *Matlack* Court explained, whereas the doctrine was once applied rigidly, subsequent to the Supreme Court's decision in *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448 (1957), where it instructed the federal courts to develop and apply a substantive body of labor law, "the federal courts have been less strict in applying the common law *functus officio* rule in reviewing labor disputes." *Teamsters Local 312* at 991. The Court explained:

These exceptions from the *functus officio* doctrine were narrowly drawn to

JUN - 6 2005

> prevent arbitrators from engaging in practices that might encourage them to change their reasoning about a decision, to redirect a distribution of an award, or to change a party's expectations about its rights and liabilities contained in an award....Therefore, whether a case falls within one of these categories must be considered in light of the underlying rationale for the modern application of *functus officio.*

*Id.* at 992.

Category 3, the Court explained, does not undermine the policy considerations that prohibit arbitrators from re-examining awards, "for there is no opportunity for redetermination on the merits of what has already been decided." *Id.* at 992, *quoting La Vale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d 569, 573 (3d Cir. 1967). Instantly, the Union does not seek to have the Arbitrator redetermine the merits of his Award. Rather, it merely seeks his determination of Crowell's compliance with the "forthwith" aspect of that Award and what it required, as well as any consequences that may flow from the failure, if any, to comply with that Award. The term "forthwith" in the context of this matter, where Crowell has caused a delay of one year by exercising its legal right of appeal, is ambiguous and therefore warrants further amplification by the original Arbitrator who issued the underlying Award.

Courts in this Circuit, and others, have frequently remanded ambiguous arbitration awards to the original arbitrator for clarification and amplification. *See, e.g., Hart v. Overseas National Airways, Inc.,* 541 F.2d 386, 392 (3d Cir. 1976) (collecting cases); *PACE Union, Local 4-1 v. BP Pipelines,* 191 F.Supp.2d 852 (S.D. Tex. 2002) (collecting cases). In *Office & Professional Employees International Union, Local No. 471 v. Brownsville General Hospital,* 186 F.3d 326 (3d Cir. 1999), the Court affirmed a remand to the original arbitrator where the arbitrator had directed the reinstatement of an employee, provided he continue therapy with a named therapist, who subsequently

4

refused to treat him. The Court held that the award became ambiguous in light of the refusal of the therapist to treat, given the arbitrator's obvious assumption that such treatment would occur. Similarly, here Arbitrator Coburn did not order back pay on the assumption that Crowell would reinstate Blisard "forthwith," which simply did not occur, thereby creating the same type of ambiguity in his Award as existed in the *Brownsville* case.

In *Glass, Molders, Pottery, Plastics and Allied Workers International Union v. Excelsior Foundry Company*, 56 F.3d 844 (7th Cir. 1995), Judge Posner noted that the doctrine of *functus officio* "originated in the bad old days when judges were hostile to arbitration and ingenious in hamstringing it," and suggested that today, "riddled with exceptions, it is hanging on by its fingernails and whether it can even be said to exist in labor arbitration is uncertain." *Id.* at 846. There, the arbitrator had ordered the reinstatement of an employee provided he completed a drug rehabilitation program within 60 days. When a dispute arose over who was financially responsible for the cost of the program, the union contacted the arbitrator, who ruled that the employee was responsible. However, due to the delay that resulted from that dispute, the employee did not complete the program within the 60 days, as measured from the date of the award. Therefore, the union again contacted the arbitrator, *ex parte*, who explained that he had intended the 60 days to be measured as of the date of his initial clarification that the grievant be responsible for the cost of the treatment. When the employer refused to reinstate the employee, the union filed an action to enforce the award.

The Seventh Circuit enforced the award, stating that, "An award that fails to address a contingency that has arisen after the award was made is incomplete;

alternatively, it is unclear; either way, it is within an exception to the [*functus officio*]

doctrine." 56 F.3d at 847. In so doing, it also remanded to the arbitrator to determine

whether the grievant was entitled to back pay due to the delay in compliance occasioned

by the employer's post-award actions in failing to comply. Its observations are

instructive:

> The only other question is whether, as the union urges, Jackson is entitled to
> backpay for the period since the arbitrator's modified award required that he be
> reinstated. Since he was entitled to reinstatement on that date, it is certainly
> arguable that an award of backpay is appropriate to place him in the financial
> position that he would have occupied had the employer not challenged the award.
> But this is another unanticipated contingency, gap, or incompleteness in the
> arbitrator's award: what would happen if Jackson was not reinstated, because the
> award was challenged? Arbitral awards sometimes make specific provision for
> such contingencies. When they do not, which as far as we are able to determine
> from the record before us is the situation here, the court is authorized to remand to
> the arbitrator.

*Id.* at 849 (citations omitted).

Just as the employer in *Excelsior Foundry* caused the gap in the anticipated

remedy by its intransigence, so, too, has Crowell caused Blisard to go a year without pay,

contrary to the Arbitrator's anticipation and Award, which responds to its final argument,

that the Union seeks to penalize it "for exercising its lawful right to seek review of the

Arbitrator's Award." That simply is not true. All that the Union seeks to do is to avoid

penalizing Blisard for the company's exercise of its legal rights. If one of two parties,

Blisard or Crowell, are to be "penalized," it stands to reason that it should be Crowell, the

party that caused the delay, and not Blisard, who was victimized by the delay in his

reinstatement through no fault of his own.

The practical implications of the current dispute also favor remand to Arbitrator

Coburn. As explained by the court in *BP Pipelines, supra*:

JUN - 6 2005

...requiring the Union to invoke and exhaust the burdensome and time-consuming grievance machinery once again to resolve "the remnants of a dispute which has already once traveled that route" would seriously undermine the federal interest in facilitating the "speedy, flexible and inexpensive resolution of labor disputes." The purpose of arbitration, and the underlying reason for the federal laws facilitating it, is to resolve disputes fairly and efficiently, not to create new ones. The Union in this case has already once exhausted the lengthy grievance/arbitration process on the question or remedies owed to Jackson, and the Court can conceive of no legitimate policy justification for forcing it to do so again. The reinvocation of the grievance machinery in this case would not only be shamefully wasteful of resources and grossly inefficient, but it would be manifestly unfair to Plaintiff, who inevitably would have to bear the economic and other costs of the new procedure.

191 F.Supp.2d at 860 (citations omitted).

Similarly, the Union in this matter has already exhausted the lengthy grievance/arbitration procedure, as well as its costs. To require it to do so yet again before an entirely new arbitrator, who would have no familiarity with this dispute, rather than by the Court's own determination or pursuant to a remand to Arbitrator Coburn, would be wasteful of time and resources.[1]

Accordingly, for the reasons set forth above and in the Union's initial brief, and in order to further the efficient and expeditious process of labor arbitration, the Court should either resolve the present dispute by issuing an order that directs Crowell to pay Blisard back pay or should remand the case to Arbitrator Coburn for final resolution.

---

[1]     Crowell's reliance upon *Philadelphia Newspapers, Inc. v. The Newspaper Guild of Greater Philadelphia, Local 10*, 1987 U.S. Dist. LEXIS 9710 (E.D. Pa. 1987), is misplaced. Having previously decided that an arbitrator's attempt to clarify his award was null and void, it subsequently held that the dispute over whether the employer's asserted compliance with the underlying award fulfilled its obligation was, itself, a new grievance that would have to be heard by a new arbitrator selected under the governing arbitration clause. Here, in contrast, there is no dispute over whether Crowell complied with the Arbitrator's direction to reinstate Blisard "forthwith;" it did not comply. The only issue, therefore, is what consequence results from that noncompliance, an issue that the original arbitrator is uniquely qualified to resolve.

Respectfully submitted,

**LAW OFFICES OF
JOSEPH J. RHOADES**

Joseph Rhoades, Esquire
P.O. Box 874
1200 Legal Arts Building
1225 King Street
Wilmington, DE  19899
(302) 427-9500


**MARKOWITZ & RICHMAN**

Thomas H. Kohn, Esquire
1100 North American Building
121 South Broad Street
Philadelphia, PA  19107
(215) 875-3100

JUN – 6 2005

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Reply Brief was served upon the following by United States mail, postage prepaid on the date listed below:

Barry M. Willoughby, Esquire
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

**Joseph Rhoades, Esquire**

Date: 6/8/05